UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: VOLKSWAGEN "CLEAN DIESEL"
MARKETING, SALES PRACTICES, AND
PRODUCTS LIABILITY LITIGATION
_____/

This Order Relates To:

*Napleton*, No. 3:16-cv-2086-CRB
_____/

MDL No. 2672 CRB  (JSC)

**ORDER RE: ECF NO. 5887
DISCOVERY DISPUTE, MOTION TO
STRIKE, MOTIONS TO SEAL**

The Court has reviewed, in camera, 32 documents that defendant Bosch GmbH has withheld from Plaintiffs.  Those documents represent a sampling of 318 withheld documents that Plaintiffs argue Bosch GmbH should produce.  As explained below, the Court concludes that, with one exception (which applies to several of the documents), Bosch GmbH has reasonably withheld the documents based on the work-product doctrine.

At the end of this Order, the Court will also address Plaintiffs' motion to strike certain documents in the record, which Bosch GmbH filed with its in-camera submission, and the parties' motions to seal certain confidential information in their submissions.

## I.  DISCOVERY DISPUTE: WORK-PRODUCT DOCTRINE

The default rule is that "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A).  When employees prepare documents as part of an internal investigation, those documents qualify for work-product protection "if one of the significant purposes of the internal investigation was to obtain or provide legal advice."  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (Kavanaugh, J.).  The record supports that Bosch GmbH's employees prepared the withheld documents as part of an internal investigation, and that a significant purpose of the investigation was to obtain legal advice.

Bosch GmbH's in-house counsel has explained in a declaration that within days of when EPA and CARB publicly accused Volkswagen of using emissions-cheating software in its cars, he and others in Bosch GmbH's legal department created an internal Task Force to investigate the company's role in developing the software. He states that the legal team organized this investigation to assess the company's legal risks, as they knew that Volkswagen faced significant penalties for using the software and that Bosch GmbH had supplied Volkswagen with technology that was used in the affected cars. He attests that he has reviewed the withheld documents and that they were part of this internal investigation. (*See* Decl., MDL Dkt. No. 5886-6.)[1]

The documents themselves are consistent with counsel's testimony. They include emails, reports, and spreadsheets that Bosch GmbH's employees prepared within the two-week period following EPA's and CARB's announcements, and they reflect a time-sensitive effort to gather information about the software in question. Given the timing of the effort, the contents of the documents, and counsel's testimony, the Court concludes that the documents were created "because of anticipated litigation," which entitles them to work-product protection. *In re Grand Jury Subpoena (Torf)*, 357 F.3d 900, 908 (9th Cir. 2004) (citation omitted).

Plaintiffs' arguments against work-product protection are unpersuasive. First, that attorneys were not copied on most of the emails in question does not mean they are ineligible for protection. As Bosch GmbH's in-house counsel has explained, the legal department was unfamiliar with the company's emissions software, and to accurately assess legal risks they needed to rely on engineers and project managers to conduct a factual investigation. When, as here, "an attorney must rely on the assistance of investigators and other agents in the compilation of materials in preparation for [litigation], [work-product protection] most assuredly lies." *AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *6 (N.D. Cal. Apr. 18, 2003).

Second, that Bosch GmbH was not subject to any "clean diesel" related lawsuits or government investigations when its employees created the documents at issue does not mean that

---

[1] A public version of the declaration will be made available with redactions. (*See infra* Part III.)

the documents are not eligible for work-product protection. Litigation against Volkswagen began almost immediately after EPA's and CARB's announcements, and given contemporaneous reports that Bosch GmbH had supplied Volkswagen with the emissions software in question, Bosch GmbH reasonably anticipated that it would soon be involved in related litigation. That reasonable belief is sufficient. *See AT&T Corp.*, 2003 WL 21212614, at *5 (explaining that the work-product doctrine requires "a reasonable belief that litigation would arise").

The above analysis does not apply to several of the 32 documents—those being internal Bosch GmbH emails about a draft statement to customers on the "VW issue." The head of Bosch GmbH's Task Force is copied on these emails, but from context his involvement appears to have been business related, not litigation related. The record supports that the head of the Task Force was also the head of Bosch GmbH's diesel-systems sales team for Volkswagen, so his involvement in business-related matters is not surprising. The Court cannot conclude that these several documents, which are documents 29 through 32 in Bosch GmbH's in-camera binder, were prepared "because of the prospect of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 907 (citation omitted). Bosch GmbH must produce them and any other withheld documents that are similar.[2]

With the exception of documents about a draft statement to customers on the "VW issue," and also with the exception of one document that Bosch GmbH has agreed to redact in part (*see* MDL Dkt. No. 5975 at 2-3), Bosch GmbH need not produce the withheld documents. The Court notes, however, that the protected content within the documents is mostly (if not entirely) factual. The documents, in other words, contain few (if any) "mental impressions, conclusions, opinions, or legal theories" of counsel. Fed. R. Civ. P. 26(b)(3)(B). As a result, they may still be discoverable if Plaintiffs can show that they have a "substantial need for the materials to prepare [their] case," and that they "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). Plaintiffs have not made such a showing to date.

---

[2] Because Bosch GmbH did not transmit or seek legal advice in these documents, they also are not covered by the attorney-client privilege. *See United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009).

## II.  PLAINTIFFS' MOTION TO STRIKE

When Bosch GmbH submitted its documents to the Court in camera, it filed a notice on the docket.  With its notice Bosch GmbH included a supplemental privilege log, which identified and summarized the 32 documents that it was submitting.  Earlier Bosch GmbH privilege logs, in contrast, identified all of the 318 withheld documents.  Plaintiffs argue that Bosch GmbH used its notice and supplemental privilege log to improperly submit supplemental briefing, and Plaintiffs have asked the Court to strike these materials from the record.  (*See* MDL Dkt. No. 5984.)

Federal Rule of Civil Procedure 12(f) states that a federal court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Nothing of that kind appears in Bosch GmbH's notice and supplemental privilege log.  To the contrary, both of those submissions provided the Court with useful information: the notice identified the documents that Bosch GmbH was submitting in camera, and the supplemental privilege log summarized those documents.  While the summaries in the supplemental privilege log are more detailed than those that appeared in earlier Bosch GmbH privilege logs, the summaries did not raise new arguments.

Plaintiffs' motion to strike is DENIED.  Bosch GmbH's motion to file a sur-reply in opposition to Plaintiffs' motion to strike (MDL Dkt. No. 6094) is also DENIED.

## III. MOTIONS TO SEAL

Plaintiffs and Bosch GmbH have moved to seal certain confidential information in their joint letter brief, in the exhibits to their letter brief, and in their briefing on the motion to strike. Consistent with prior Orders in this MDL (*see, e.g.*, MDL Dkt. Nos. 4049, 4147, 5223), the Court will permit Plaintiffs and Bosch GmbH, subject to one exception, to redact from their submissions the names and job titles of non-party Bosch employees, and to file under seal in its entirety an index of the names and job titles of the Bosch GmbH employees who sent and received the emails in question.  The exception is that one job title, the head of the Task Force, should not be redacted. That title is needed for context, as the Task Force, and the actions taken by the head of the Task Force, are relevant to the parties' dispute.  The name of the employee who was the head of the Task Force may be redacted.

The parties, after meeting and conferring, shall file revised versions of their submissions, with redactions limited to those that the Court has approved. The motions to seal are GRANTED in part and DENIED in part.[3]

**IT IS SO ORDERED.**

Dated: April 26, 2019

JACQUELINE S. CORLEY
United States Magistrate Judge

United States District Court
Northern District of California

---

[3] The motions to seal are found at the following docket numbers: MDL Dkt. Nos. 5886, 5950, 5974, 5982, 6046, 6071; *Napleton*, Dkt. Nos. 58, 63, 66, 68, 75, 76.

5